LAW OFFICE OF KURT DAVID HERMANSEN
Kurt David Hermansen, Cal. Bar No. 166349
110 West C Street, Suite 1810
San Diego, California 92101-3909
Telephone: (619) 236-8300
Facsimile: (619) 236-8400
KDH@KurtDavidHermansen.com
Attorney for Defendant
EMMANUEL ESPINOZA-COTA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JEFFREY T. MILLER)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EMMANUEL ESPINOZA-COTA,<br><br>Defendant. | Case No. 08cr2303 JM<br><br>***FIRST AMENDED*** NOTICE OF MOTIONS AND MOTIONS:<br><br>(1) TO COMPEL DISCOVERY<br>(2) PRESERVE EVIDENCE;<br>(3) SUPPRESS STATEMENTS UNDER *MIRANDA*; AND<br>(4) FOR LEAVE TO FILE FURTHER MOTIONS.<br><br>Date: September 12, 2008, at 2:00 p.m. |

TO: KAREN P. HEWITT, UNITED STATES ATTORNEY; AND STEVEN MILLER, ASSISTANT UNITED STATES ATTORNEY:

PLEASE TAKE NOTICE that on **September 12, 2008, at 2:00 p.m.**, or as soon thereafter as counsel may be heard, Defendant, EMMANUEL ESPINOZA-COTA, by and through counsel, Kurt David Hermansen, will ask this Court to enter an order granting the following motions.

**MOTIONS**

Defendant, EMMANUEL ESPINOZA-COTA, by and through counsel, Kurt David Hermansen, pursuant to the United States Constitution, the Federal Rules of Criminal Procedure, and all other applicable statutes, case law and local rules, hereby moves this Court for an Order:

1. compelling discovery;
2. preserving evidence;
3. suppressing statements; and
4. granting leave to file further motions.

These motions are based upon the instant motions and notice of motions, the attached statement of facts and memorandum of points and authorities, and all other materials that may come to this Court's attention at the time of the hearing on these motions.

Dated: *September 5, 2008*

*s/Kurt David Hermansen*

Attorney for Defendant
Email: KDH@KurtDavidHermansen.com

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | ) | Case No. 08cr2303 JM |
| v. | ) | CERTIFICATE OF SERVICE |
| EMMANUEL ESPINOZA-COTA, Defendant. | ) | |

IT IS HEREBY CERTIFIED THAT:

I, KURT DAVID HERMANSEN, am a citizen of the United States and am at least eighteen years of age. My business address is 110 West C Street, Suite 1810, San Diego, California 92101.

I have caused service of **NOTICE OF MOTIONS AND MOTIONS: (1) TO COMPEL DISCOVERY; (2) PRESERVE EVIDENCE; (3) SUPPRESS STATEMENTS UNDER *MIRANDA*; AND (4) FOR LEAVE TO FILE FURTHER MOTIONS.**

The following recipients are currently on the list to receive e-mail notices for this case and have thus been served electronically at the following email addresses:

**Kurt David Hermansen**
KDH@KurtDavidHermansen.com

**Steve Miller**
Steve.Miller2@usdoj.gov, efile.dkt.gc1@usdoj.gov, Maria.Richardson@usdoj.gov

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: *September 5, 2008*

*s/Kurt David Hermansen*
Attorney for Defendant
KDH@KurtDavidHermansen.com

LAW OFFICE OF KURT DAVID HERMANSEN
Kurt David Hermansen, Cal. Bar No. 166349
110 West C Street, Suite 1810
San Diego, California 92101-3909
Telephone: (619) 236-8300
Facsimile: (619) 236-8400
KDH@KurtDavidHermansen.com
Attorney for Defendant
EMMANUEL ESPINOZA-COTA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>EMMANUEL ESPINOZA-COTA,<br><br>Defendant. | Case No. 08cr2303 JM<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTIONS |

## I. STATEMENT OF FACTS

On July 11, 2008, the grand jury returned a two-count Indictment against Mr. Espinoza-Cota. Mr. Espinoza-Cota is charged in count one with importation of 78.52 kilograms of marijuana into the United States from a place outside of the United States, in violation of 21 U.S.C. §§ 952 and 960. Mr. Espinoza-Cota is charged in count two with possession of 78.52 kilograms of marijuana with intent to distribute the marijuana, in violation of 21 U.S.C. § 841(a)(1).

Further facts will be discussed in the argument sections below as they become relevant.

## II. MOTION TO COMPEL DISCOVERY

Defendant moves for the production of discovery pursuant to FED. R. CRIM. P. 12(b)(4) and 16. This request is not limited to items the prosecutor knows of, but rather includes all

discovery listed below that is in the custody, control, care, or knowledge of any investigative or other governmental agencies closely connected to the prosecution. *See Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *United States v. Bryan*, 868 F.2d 1032, 1035 (9th Cir. 1989).

1. Defendant's Statements. The Government must reveal all written/oral statements made by Defendant, regardless of whether the Government intends to make any use of those statements. *See* FED. R. CRIM. P. 16(a)(1)(A); *id.* advisory committee's note (1991 amendments); *see also United States v. Bailleaux*, 685 F.2d 1105, 1113-14 (9th Cir. 1982).

2. Personnel Records of Government Officers Involved in the Interrogation. Defendant moves for production of all citizen complaints and other related internal affairs documents involving any of the immigration officers or other law enforcement officers who were involved in the investigation, arrest and interrogation of Defendant. *See Pitchess v. Superior Court*, 11 Cal. 3d 531, 539 (1974). Because of the sensitive nature of these documents, defense counsel will be unable to procure them from any other source.

3. Government Examination of Law Enforcement Personnel Files — Especially the Personnel Files and All Files Pertaining to the Interrogating Officers. Defendant requests that the Government examine the personnel files and any other files within its custody, care or control, or which could be obtained by the government, for all testifying witnesses, including testifying officers. Defendant requests the attorney for the Government review these files for evidence of perjury or other similar dishonesty, or any other material relevant to impeachment, or any information that is exculpatory, pursuant to its duty under *United States v. Henthorn*, 931 F.2d 29, 30-31 (9th Cir. 1991). The obligation to examine files arises by virtue of the defense making a demand for their review. The Ninth Circuit in *Henthorn* remanded for *in camera* review of the agents' files because the government failed to examine the files of agents who testified at trial. This Court should therefore order the Government to review all such files for all testifying witnesses and turn over any material relevant to impeachment or that is exculpatory to Defendant before trial. Defendant specifically requests that the prosecutor, not the law enforcement officers, review the files in this case. The duty to review the files, under *Henthorn*, should be the prosecutor's. Only the prosecutor has the legal knowledge and ethical

obligations to fully comply with this request. *See United States v. Jennings*, 960 F.2d 1488, 1492 (9th Cir. 1992); *see also Kyles v. Whitley*, 514 U.S. 438, 437 (1995) (prosecutors have "a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police").

4. Arrest Reports, Notes and Dispatch Tapes & Radio Traffic.

Defense counsel has not received Special Agent ("SA") Brandon Wood's Report of Investigation ("ROI"). On September 3, 2003, Heather L. Beugen (an attorney assisting me with this case) and Maria Marcucilli, my investigator, spoke with SA Wood in El Centro, California. SA Wood is the case agent assigned to this case. SA Wood told Ms. Beugen that he did write an ROI and forwarded it to the United States Attorney's Office.

Mr. Espinoza-Cota requests the Court order the Government to disclose SA Wood's ROI **on or before September 12, 2008.** He also requests the Court order the Government to disclose any other ROI's written regarding this case.

Defendant also specifically moves for a copy of all arrest reports, notes, dispatch or any other tapes, and T.E.C.S. records that relate to the circumstances surrounding Defendant's initial contact with inspectors at the primary inspection area, post-arrest and ***any*** questioning. This request includes any ***rough notes***, records, reports, transcripts, photographs or other documents in which Defendant's statements or any other discoverable material is contained.

This information is discoverable under Fed. R. Crim. P. 16 and *Brady v. Maryland*.

5. *Brady* Material. Defendant moves for a copy of all documents, statements, agents' reports, and tangible evidence favorable to Defendant on the issue of guilt or which affects the credibility of the Government's witnesses and case. Under *Brady*, impeachment and exculpatory evidence constitutes evidence favorable to the accused. *See United States v. Bagley*, 473 U.S. 667, 676-78 (1985); *United States v. Agurs*, 427 U.S. 97, 102-06 (1976).

6. Defendant's Prior Record. Under FED. R. CRIM. P. 16(a)(1)(B), Defendant specifically moves for a copy of Defendant's prior criminal record within the possession, custody, or control of the government. Defendant specifically requests that the copy be complete and legible; faint, obscured or otherwise illegible copies of rap sheets are not acceptable.

7. Any Proposed 404(b) Evidence. The government must produce evidence of "other acts" under FED. R. CRIM. P. 16(a)(1)(C) and FED. R. EVID. 404(b), 609. *See United States v. Vega*, 188 F.3d 1150, 1154 (9th Cir. 1999) (holding that Rule 404(b) "applies to all 'other acts,' not just bad acts"). This request includes any TECS records the Government intends to introduce at trial, whether in its case-in-chief, for possible impeachment, or in rebuttal. *Id.* In addition, under Rule 404(b), Defendant specifically requests the government "provide reasonable notice in advance of trial . . . of the general nature" of any evidence the government proposes to introduce under FED. R. EVID. 404(b) at trial. *See id.* at 1154-55. Additionally, Defendant requests that such notice be given ***three weeks*** before trial to give the defense time to adequately investigate and prepare for trial.

8. TECS Reports. Defendant moves for all TECS reports. Rule 404(b) "applies to all 'other acts,' not just bad acts." *Vega*, 188 F.3d at 1154; *see* FED. R .EVID. 404(b).

Mr. Espinoza-Cota makes ***three specific requests*** for T.E.C.S. information regarding his initial encounter with Primary Inspector Customs and Border Protection Officer (CBP Officer) V. Fonseca, at the Calexico West Port of Entry ("POE") on April 8, 2008, at approximately 3:46 p.m.

**a. defendant moves for the disclosure of T.E.C.S. information, and any available photographs, video-or DVD-taped footage of primary inspection lane number 6.**

Defendant moves for the disclosure of T.E.C.S. information, any photographs, video-or DVD-taped footage of **primary inspection lane number 6** on April 8, 2008, for the entire period of time beginning 15 minutes before and ending 15 minutes after ***3:46 p.m.*** (the time that Mr. Espinoza-Cota was initially stopped by CBP Officer V. Fonseca in Calexico West POE's **primary inspection lane number 6**).

This information is material to Mr. Espinoza-Cota's defense and must be disclosed pursuant to Fed. R. Crim P. 16 and *Brady*.

**b. defendant moves for the disclosure of T.E.C.S. information, and any available photographs, video-or DVI-taped footage of <u>primary inspection lane number 5.</u>**

Defendant moves for the disclosure of T.E.C.S. information, and any photographs, video- or DVD-taped footage of **<u>primary inspection lane number 5</u>** (the lane just to the left of primary inspection lane number 6) on April 8, 2008, for the entire period of time beginning 15 minutes before and ending 15 minutes after 3:46 p.m. (3:46 p.m. is the time that Mr. Espinoza-Cota was initially stopped by CBP Officer V. Fonseca in **<u>primary inspection lane number 6</u>**).

This information qualifies as *Brady* material because it may lead to the finding of "Jefe," which would exculpate Mr. Espinoza-Cota.

**c. defendant moves for disclosure of T.E.C.S. information regarding any and all crossings of the 1989 white and grey-striped Ford F-250 pick-up truck: California License Plate number 8N16454.**

According to discovery, CBP Officer V. Fonseca, the primary inspector that stopped Mr. Espinoza-Cota at the Calexico West POE on April 8, 2008, at 3:46 p.m., noticed that the pick-up truck had one prior crossing at the Calexico West POE. Bates Stamp ("BS") 2.

Mr. Espinoza-Cota moves for disclosure of T.E.C.S. information regarding any and all crossings by the 1989 white and grey-striped Ford F-250 pick-up truck (California License Plate number 8N16454), **<u>prior to</u>** April 8, 2008, at 3:46 p.m.

This information qualifies as *Brady* material and must be disclosed.

9. <u>Evidence Seized</u>. Under Fed. R. Crim. P. 16(a)(1)(C), the defense moves for a copy of discovery of evidence seized as a result of any search.

SA Wood or his partner examined a telephone recovered from Mr. Espinoza-Cota after his arrest and also discovered five outgoing telephone calls. Further, SA Wood or his partner wrote down the five outgoing telephone numbers in either notes or in SA Wood's ROI. But, the numbers have not been turned over to the defense and the defense has not had an opportunity to search the phone.

Mr. Espinoza-Cota requests the Court order the Government to disclose this information **<u>on or before September 12, 2008.</u>** In this case, the information contained within the telephone falls under *Brady* because it may lead to favorable, exculpatory information that is necessary for a proper investigation.

10. <u>Tangible Objects</u>. Under Fed. R. Crim. P. 16(a)(2)(C), Defendant specifically requests the opportunity to inspect and copy and test, if necessary, all documents and tangible objects, including any books, papers, photographs, buildings, automobiles, or places, or copies, depictions, or portions thereof which are material to the defense or intended for use in the government's case-in-chief, or were obtained from or belong to Defendant.

11. <u>Evidence of Criminal Investigation of Any Government Witness</u>. Defendant moves for production of any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct.

12. <u>Jencks Act Material</u>. Defendant moves for production in advance of trial of all material, including dispatch tapes, which the Government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500 and FED. R. CRIM. P. 26.2. Advance production will avoid the possibility of delay at the request of defendant to investigate the Jencks material. A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under § 3500(e)(1). *Campbell v. United States*, 373 U.S. 487, 490-92 (1963).

13. <u>Expert Summaries</u>. Defendant moves for production of written summaries of all expert testimony the Government intends to present under Federal Rules of Evidence 702, 703 or 705 during its case-in-chief, written summaries of the bases for each expert's opinion, and written summaries of the experts' qualifications. FED. R. CRIM. P. 16(a)(1)(E)-(G).

14. <u>Reports of Scientific Tests or Examinations</u>. Under Fed. R. Crim. P. 16(a)(1)(D), Defendant moves for discovery of the reports of all tests and examinations conducted upon the evidence in this case, including but not limited to any fingerprint analyses or chemical tests that are within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the

attorney for the government, and which are material to the preparation of the defense or which are intended for use by the government as evidence-in-chief at trial.

15. Residual Request. Defendant intends by this discovery motion to invoke the right to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States. This request specifically includes all subsections of Rule 16. Defendant requests that the Government provide Defendant and his attorney with the above requested material sufficiently in advance of trial to avoid unnecessary delay before trial and before cross-examination.

## III. PRESERVATION OF EVIDENCE

Defendant specifically moves for the preservation of all dispatch tapes and any other physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the Government and which relates to the arrest or the events leading to the arrest in this case. *See Riley*, 189 F.3d at 806-08. Defendant further requests that the government be ordered to question all the agencies and individuals involved in the prosecution and investigation of this case to determine if such evidence exists, and if it does exist to instruct those parties to preserve it. This request also includes any material or percipient witness who might be deported or is otherwise likely to become unavailable (e.g., undocumented aliens and transients). U.S. Customs Service requires a court order for the preservation of narcotics, and Defendant hereby moves for such an order.

## IV. THE COURT SHOULD SUPPRESS MR. ESPINOZA-COTA'S STATEMENT MADE DURING HIS CUSTODIAL INTERROGATION BECAUSE HE DID NOT KNOWINGLY AND INTELLIGENTLY UNDERSTAND AND WAIVE HIS *MIRANDA* RIGHTS

Mr. Espinoza-Cota's statements ***must*** be suppressed because they were not made following a knowing, voluntary, and intelligent waiver of his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

To be effective, a waiver of the right to remain silent and the right to counsel must be made knowingly, intelligently, and voluntarily. *Schneckloth v. Bustamonte*, 412 U.S. 218

(1973). The standard of proof for a waiver of this constitutional right is *high*. *Miranda*, 384 U.S. at 475. *See United States v. Heldt*, 745 F.2d 1275, 1277 (9th Cir. 1984).

In *Derrick v. Peterson*, 924 F.2d 813 (9th Cir. 1990), the Ninth Circuit confirmed that the issue of the validity of a *Miranda* waiver requires a two prong analysis; the waiver must be both: (1) voluntary, and (2) knowing and intelligent. *Id*. at 820. The voluntariness prong of this analysis "is equivalent to the voluntariness inquiry under the [Fifth] Amendment . . . ." *Id*. The second prong, however, requiring that the waiver be "knowing and intelligent," mandates an inquiry into whether "the waiver [was] made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Id*. at 820-21 (*quoting Colorado v. Spring*, 479 U.S. 564, 573 (1987)). This inquiry requires that the court determine whether "the requisite level of comprehension" existed before the purported waiver may be upheld. *Id*. Thus, "[o]nly if the 'totality of the circumstances surrounding the interrogation' reveal ***both*** an uncoerced choice ***and*** the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Id*. (*quoting Colorado*, 479 U.S. at 573) (citations omitted) (emphasis added). *See also United States v. Garibay*, 143 F.3d 534, 537-38 (9th Cir. 1998) (stating that agents must use caution when dealing with defendants with limited English skills and ***low mental capacity***).

**A. Facts Relevant to Mr. Espinoza-Cota's Suppression Motion**

On April 8, 2008, Mr. Espinoza-Cota was interrogated by SA Brandon Wood and SA Ruben McDowell. Bates Stamp ("BS") 5.[1] This interrogation was video-taped.[2]

At **7:48:40**, SA Wood told Mr. Espinoza-Cota that before proceeding with the interview, he had to make sure Mr. Espinoza-Cota understood his rights.[3]

SA Wood then showed Mr. Espinoza-Cota a waiver form. *See* Exhibit A, "Waiver of Rights form." Although the form reads, "***I have had the above statement of my rights read and***

---

[1] Bates Stamp citations refer to the pages of discovery provided to defense counsel by the Government.

[2] The DVD-recorded interrogation of Mr. Espinoza-Cota is being submitted to the Court's chambers. For purposes of the motion hearing, the DVD of Mr. Espinoza-Cota's interrogation is labeled "Exhibit B."

[3] The time-stamped citations refer to the time stamps using Windows Media Player.

***explained to me and I fully understand these rights***," SA Wood asked Mr. Espinoza-Cota to read each right out loud. *See* Exhibit B, "DVD of Mr. Espinoza-Cota's Interrogation."

Although Mr. Espinoza-Cota mumbled parts of each statement out loud, it is clear from the DVD that he was having trouble reading the form. *See id.* It is noticeable from the DVD that Mr. Espinoza-Cota has the most trouble reading the ***last two rights on the form***, the second to last right being the right to have an attorney present during questioning. *See* Exhibit A, **7:50:37**; *see also* Exhibit B.

Perhaps most perplexing is the fact that after mumbling the "Waiver" portion of the form out loud, Mr. Espinoza-Cota signed the form and acknowledged that ***the agents*** read him his rights and explained to him his rights. *See* Exhibit A; *see also* Exhibit B. Neither SA Wood nor SA McDowell read or explained Mr. Espinoza-Cota's *Miranda* rights to him. *See* Exhibit A, **7:50:00**.

At **7:55:49**, Mr. Espinoza-Cota starts to invoke his right to counsel. He tells agents, "Maybe I should hire an attorney . . . I don't want to cut corners or nothin' . . . you're saying if I'm honest with you . . ." Then, SA McDowell interrupts and says, "How much were they going to pay you?" Mr. Espinoza-Cota then makes some statements.

On August 29, 2008, Dr. David P. DeFrancesco, Ph.D., evaluated Mr. Espinoza-Cota at the GEO Group jail. Dr. DeFrancesco performed two cognitive/intellectual functioning tests. *See* Exhibit C, Confidential "Report of Dr. DeFrancesco, p. 4" (filed under seal as Exhibit C). Dr. Defrancesco determined Mr. Espinoza-Cota's "full scale IQ" to be **77**. *Id.* An IQ score of 77 puts Mr. Espinoza-Cota in the Borderline range of functioning. *Id.*

**B. Mr. Espinoza-Cota's Borderline Intelligence Prevented Him from Understanding His *Miranda* Rights**

Persons with IQ scores near 77 "are generally poor problem solvers and will respond impulsively rather than to think about alternative conclusions to their actions." Exhibit C, p. 5. Moreover, persons with Borderline Intellectual Functioning "often do better when they are provided assistance." Exhibit C, p. 6.

It is clear from the DVD that Mr. Espinoza-Cota was struggling just to read the Waiver of Rights form. Despite his struggle, neither agent asked him if he was having trouble reading or if Mr. Espinoza-Cota needed assistance. Moreover, the Waiver of Rights form states that an agent read the suspect his rights and explained to the suspect those rights. ***Neither one*** of these things occurred in this case. Therefore, Mr. Espinoza-Cota's waiver was not knowing and intelligent.

**C. Mr. Espinoza-Cota Did Not Knowingly and Intelligently Waive His Miranda Rights Merely By Signing the Waiver Form**

By signing the Waiver of Rights form, a suspect asserts that an agent read him his *Miranda* rights and explained to him what those rights mean. Here, Mr. Espinoza-Cota signed the Waiver of Rights form and asserted that an agent read and explained to him his rights even though neither ever happened. Moreover, Mr. Espinoza-Cota signed the waiver form after mumbling the above mentioned assertions. *See* Exhibit A, **7:50:00**.

A person who understood what he was signing would not sign a form, asserting that something untrue occurred. Therefore, Mr. Espinoza-Cota's statements should be suppressed.

**D. The Agents Failed to Ascertain Whether Mr. Espinoza-Cota Was Capable of Reading and Comprehending the *Miranda* Rights**

Agent Wood asked Mr. Espinoza-Cota several questions at the beginning of the interrogation, including: (1) his address; (2) his parents' names; (3) their address; etc. *See* Exhibit A, **7:42:06-7:47:51**. Not once does SA Wood determine how far Mr. Espinoza-Cota went in school or whether he could read or write. It is also clear from the DVD that Mr. Espinoza-Cota was having trouble reading the rights form.

Thus, the Government cannot prove that Mr. Espinoza-Cota made a knowing, intelligent and voluntary waiver of his *Miranda* rights because they cannot even show that he could comprehend what he was reading.

**E. Mr. Espinoza-Cota Attempted to Invoke His Right to Counsel**

Mr. Espinoza-Cota attempted to assert his right to counsel during his interrogation. While he was deciding out loud whether he should invoke his right to an attorney, SA McDowell immediately interrupted him and stated, "How much were they going to pay you?"

Because Mr. Espinoza-Cota is of borderline intelligence, he responded "impulsively rather than think about alternative conclusions" such as getting a lawyer. Agents should have clarified whether Mr. Espinoza-Cota wanted an attorney. Instead, they tried to get him to abandon that idea and give them a statement. Thus, Mr. Espinoza-Cota's alleged *Miranda* waiver was not knowing, intelligent and voluntary.

**F. Conclusion**

For the foregoing reasons, the Government cannot meet its burden of proving that Mr. Espinoza-Cota's alleged *Miranda* waiver was knowing, intelligent and voluntary. Thus, the Court should suppress Mr. Espinoza-Cota's statements.

**V. CONCLUSION**

For the foregoing reasons, Mr. Espinoza-Cota requests the Court grant his motions.

Dated: *September 5, 2008*

*s/Kurt David Hermansen*

Attorney for Defendant
Email: KDH@KurtDavidHermansen.com

# EXHIBIT A

U.S. Immigration and Customs Enforcement

STATEMENT OF RIGHTS

Before we ask you any questions, it is my duty to advise you of your rights.

E.E. You have the right to remain silent.

E.E. Anything you say can be used against you in court, or other proceedings.

E.E. You have the right to consult an attorney before making any statement or answering any questions.

E.E. You have the right to have an attorney present with you during questioning.

E.E. If you cannot afford an attorney, one will be appointed for you before any questioning, if you wish.

E.E. If you decide to answer questions now, you still have the right to stop the questioning at any time, or to stop the questioning for the purpose of consulting an attorney.

---

WAIVER

I have had the above statement of my rights read and explained to me and I fully understand these rights. I waive them freely and voluntarily, without threat or intimidation and without any promise of reward or immunity. I was taken into custody at 0455 (time), on 04/08/08 (date), and have signed this document at 7:52 AM (time), on 04/08/08 (date).

Emmanuel Espinoza
Print Name

Signature

WITNESS: DATE: 04/08/08

WITNESS: DATE: 04/08/08