LAW OFFICE OF KURT DAVID HERMANSEN
Kurt David Hermansen, Cal. Bar No. 166349
110 West C Street, Suite 1903
San Diego, California 92101-3909
Telephone: (619) 236-8300
Facsimile: (619) 794-2263
KDH@KurtDavidHermansen.com
Attorney for Defendant
EMMANUEL ESPINOZA-COTA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EMMANUEL ESPINOZA-COTA,<br><br>Defendant. | Case No. 08cr2303 JM<br><br>***SECOND AMENDED*** NOTICE OF MOTIONS AND MOTIONS TO:<br><br>(1) COMPEL DISCOVERY;<br><br>(2) PRESERVE EVIDENCE;<br><br>(3) SUPPRESS STATEMENTS UNDER *MIRANDA*;<br><br>(4) SUPPRESS EVIDENCE OBTAINED FROM UNLAWFUL CELL PHONE SEARCH;<br><br>(5) TAKE JUDICIAL NOTICE OF EXHIBITS A-C FILED IN SUPPORT OF THE MOTIONS FILED AS DOCKET #15; AND<br><br>(6) FOR LEAVE TO FILE FURTHER MOTIONS.<br><br>Date: September 12, 2008, at 2:00 p.m. |

TO: KAREN P. HEWITT, UNITED STATES ATTORNEY; AND STEVEN MILLER, ASSISTANT UNITED STATES ATTORNEY:

PLEASE TAKE NOTICE that on **September 12, 2008, at 2:00 p.m.**, or as soon thereafter as counsel may be heard, Defendant, EMMANUEL ESPINOZA-COTA, by and through counsel, Kurt David Hermansen, will ask this Court to enter an order granting the following motions.

**MOTIONS**

Defendant, EMMANUEL ESPINOZA-COTA, by and through counsel, Kurt David Hermansen, pursuant to the United States Constitution, the Federal Rules of Criminal Procedure, and all other applicable statutes, case law and local rules, hereby moves this Court for an Order:

1. compelling discovery;
2. preserving evidence;
3. suppressing statements;
4. suppressing evidence obtained from unlawful cell phone search;
5. take judicial notice of exhibits a-c filed in support of the motions filed as docket #15 and;
6. granting leave to file further motions.

These motions are based upon the instant motions and notice of motions, the attached statement of facts and memorandum of points and authorities, and all other materials that may come to this Court's attention at the time of the hearing on these motions.

Dated: *September 9, 2008*

*s/Kurt David Hermansen*

Attorney for Defendant
Email: KDH@KurtDavidHermansen.com

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. EMMANUEL ESPINOZA-COTA, Defendant. | ) | Case No. 08cr2303 JM<br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, KURT DAVID HERMANSEN, am a citizen of the United States and am at least eighteen years of age. My business address is 110 West C Street, Suite 1903, San Diego, California 92101.

I have caused service of ***SECOND AMENDED*** **NOTICE OF MOTIONS AND MOTIONS TO: (1) COMPEL DISCOVERY; (2) PRESERVE EVIDENCE; (3) SUPPRESS STATEMENTS UNDER *MIRANDA*; (4) SUPPRESS EVIDENCE OBTAINED FROM UNLAWFUL CELL PHONE SEARCH; (5) TAKE JUDICIAL NOTICE OF EXHIBITS A-C FILED IN SUPPORT OF THE MOTIONS FILED AS DOCKET #15 AND (6) FOR LEAVE TO FILE FURTHER MOTIONS.**

The following recipients are currently on the list to receive e-mail notices for this case and have thus been served electronically at the following email addresses:

**Kurt David Hermansen**
KDH@KurtDavidHermansen.com

**Steve Miller**
Steve.Miller2@usdoj.gov, efile.dkt.gc1@usdoj.gov, Maria.Richardson@usdoj.gov

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: *September 9, 2008*

*s/Kurt David Hermansen*
Attorney for Defendant
KDH@KurtDavidHermansen.com

LAW OFFICE OF KURT DAVID HERMANSEN
Kurt David Hermansen, Cal. Bar No. 166349
110 West C Street, Suite 1903
San Diego, California 92101-3909
Telephone: (619) 236-8300
Facsimile: (619) 794-2263
KDH@KurtDavidHermansen.com
Attorney for Defendant
EMMANUEL ESPINOZA-COTA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. EMMANUEL ESPINOZA-COTA, Defendant. | ) | Case No. 08cr2303 JM<br><br>***SECOND AMENDED*** MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTIONS |

## I. STATEMENT OF FACTS

On July 11, 2008, the grand jury returned a two-count Indictment against Mr. Espinoza-Cota. Mr. Espinoza-Cota is charged in count one with importation of 78.52 kilograms of marijuana into the United States from a place outside of the United States, in violation of 21 U.S.C. §§ 952 and 960. Mr. Espinoza-Cota is charged in count two with possession of 78.52 kilograms of marijuana with intent to distribute the marijuana, in violation of 21 U.S.C. § 841(a)(1).

Further facts will be discussed in the argument sections below as they become relevant.

## II. MOTION TO COMPEL DISCOVERY

Defendant moves for the production of discovery pursuant to FED. R. CRIM. P. 12(b)(4) and 16. This request is not limited to items the prosecutor knows of, but rather includes all

discovery listed below that is in the custody, control, care, or knowledge of any investigative or other governmental agencies closely connected to the prosecution. *See Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *United States v. Bryan*, 868 F.2d 1032, 1035 (9th Cir. 1989).

1. Defendant's Statements. The Government must reveal all written/oral statements made by Defendant, regardless of whether the Government intends to make any use of those statements. *See* FED. R. CRIM. P. 16(a)(1)(A); *id.* advisory committee's note (1991 amendments); *see also United States v. Bailleaux*, 685 F.2d 1105, 1113-14 (9th Cir. 1982).

2. Personnel Records of Government Officers Involved in the Interrogation. Defendant moves for production of all citizen complaints and other related internal affairs documents involving any of the immigration officers or other law enforcement officers who were involved in the investigation, arrest and interrogation of Defendant. *See Pitchess v. Superior Court*, 11 Cal. 3d 531, 539 (1974). Because of the sensitive nature of these documents, defense counsel will be unable to procure them from any other source.

3. Government Examination of Law Enforcement Personnel Files — Especially the Personnel Files and All Files Pertaining to the Interrogating Officers. Defendant requests that the Government examine the personnel files and any other files within its custody, care or control, or which could be obtained by the government, for all testifying witnesses, including testifying officers. Defendant requests the attorney for the Government review these files for evidence of perjury or other similar dishonesty, or any other material relevant to impeachment, or any information that is exculpatory, pursuant to its duty under *United States v. Henthorn*, 931 F.2d 29, 30-31 (9th Cir. 1991). The obligation to examine files arises by virtue of the defense making a demand for their review. The Ninth Circuit in *Henthorn* remanded for *in camera* review of the agents' files because the government failed to examine the files of agents who testified at trial. This Court should therefore order the Government to review all such files for all testifying witnesses and turn over any material relevant to impeachment or that is exculpatory to Defendant before trial. Defendant specifically requests that the prosecutor, not the law enforcement officers, review the files in this case. The duty to review the files, under *Henthorn*, should be the prosecutor's. Only the prosecutor has the legal knowledge and ethical

obligations to fully comply with this request. *See United States v. Jennings*, 960 F.2d 1488, 1492 (9th Cir. 1992); *see also Kyles v. Whitley*, 514 U.S. 438, 437 (1995) (prosecutors have "a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police").

4. Arrest Reports, Notes and Dispatch Tapes & Radio Traffic.

Defense counsel has not received Special Agent ("SA") Brandon Wood's Report of Investigation ("ROI"). On September 3, 2003, Heather L. Beugen (an attorney assisting me with this case) and Maria Marcucilli, my investigator, spoke with SA Wood in El Centro, California. SA Wood is the case agent assigned to this case. SA Wood told Ms. Beugen that he did write an ROI and forwarded it to the United States Attorney's Office.

Mr. Espinoza-Cota requests the Court order the Government to disclose SA Wood's ROI **on or before September 12, 2008.** He also requests the Court order the Government to disclose any other ROI's written regarding this case.

Defendant also specifically moves for a copy of all arrest reports, notes, dispatch or any other tapes, and T.E.C.S. records that relate to the circumstances surrounding Defendant's initial contact with inspectors at the primary inspection area, post-arrest and ***any*** questioning. This request includes any ***rough notes***, records, reports, transcripts, photographs or other documents in which Defendant's statements or any other discoverable material is contained.

This information is discoverable under Fed. R. Crim. P. 16 and *Brady v. Maryland*.

5. *Brady* Material. Defendant moves for a copy of all documents, statements, agents' reports, and tangible evidence favorable to Defendant on the issue of guilt or which affects the credibility of the Government's witnesses and case. Under *Brady*, impeachment and exculpatory evidence constitutes evidence favorable to the accused. *See United States v. Bagley*, 473 U.S. 667, 676-78 (1985); *United States v. Agurs*, 427 U.S. 97, 102-06 (1976).

6. Defendant's Prior Record. Under FED. R. CRIM. P. 16(a)(1)(B), Defendant specifically moves for a copy of Defendant's prior criminal record within the possession, custody, or control of the government. Defendant specifically requests that the copy be complete and legible; faint, obscured or otherwise illegible copies of rap sheets are not acceptable.

7. Any Proposed 404(b) Evidence. The government must produce evidence of "other acts" under FED. R. CRIM. P. 16(a)(1)(C) and FED. R. EVID. 404(b), 609. *See United States v. Vega*, 188 F.3d 1150, 1154 (9th Cir. 1999) (holding that Rule 404(b) "applies to all 'other acts,' not just bad acts"). This request includes any TECS records the Government intends to introduce at trial, whether in its case-in-chief, for possible impeachment, or in rebuttal. *Id.* In addition, under Rule 404(b), Defendant specifically requests the government "provide reasonable notice in advance of trial . . . of the general nature" of any evidence the government proposes to introduce under FED. R. EVID. 404(b) at trial. *See id.* at 1154-55. Additionally, Defendant requests that such notice be given ***three weeks*** before trial to give the defense time to adequately investigate and prepare for trial.

8. TECS Reports. Defendant moves for all TECS reports. Rule 404(b) "applies to all 'other acts,' not just bad acts." *Vega*, 188 F.3d at 1154; *see* FED. R .EVID. 404(b).

Mr. Espinoza-Cota makes ***three specific requests*** for T.E.C.S. information regarding his initial encounter with Primary Inspector Customs and Border Protection Officer (CBP Officer) V. Fonseca, at the Calexico West Port of Entry ("POE") on April 8, 2008, at approximately 3:46 p.m.

**a. defendant moves for the disclosure of T.E.C.S. information, and any available photographs, video-or DVD-taped footage of primary inspection lane number 6.**

Defendant moves for the disclosure of T.E.C.S. information, any photographs, video-or DVD-taped footage of **primary inspection lane number 6** on April 8, 2008, for the entire period of time beginning 15 minutes before and ending 15 minutes after ***3:46 p.m.*** (the time that Mr. Espinoza-Cota was initially stopped by CBP Officer V. Fonseca in Calexico West POE's **primary inspection lane number 6**).

This information is material to Mr. Espinoza-Cota's defense and must be disclosed pursuant to Fed. R. Crim P. 16 and *Brady*.

**b. defendant moves for the disclosure of T.E.C.S. information, and any available photographs, video-or DVI-taped footage of <u>primary inspection lane number 5.</u>**

Defendant moves for the disclosure of T.E.C.S. information, and any photographs, video- or DVD-taped footage of **<u>primary inspection lane number 5</u>** (the lane just to the left of primary inspection lane number 6) on April 8, 2008, for the entire period of time beginning 15 minutes before and ending 15 minutes after 3:46 p.m. (3:46 p.m. is the time that Mr. Espinoza-Cota was initially stopped by CBP Officer V. Fonseca in **<u>primary inspection lane number 6</u>**).

This information qualifies as *Brady* material because it may lead to the finding of "Jefe," which would exculpate Mr. Espinoza-Cota.

**c. defendant moves for disclosure of T.E.C.S. information regarding any and all crossings of the 1989 white and grey-striped Ford F-250 pick-up truck: California License Plate number 8N16454.**

According to discovery, CBP Officer V. Fonseca, the primary inspector that stopped Mr. Espinoza-Cota at the Calexico West POE on April 8, 2008, at 3:46 p.m., noticed that the pick-up truck had one prior crossing at the Calexico West POE. Bates Stamp ("BS") 2.

Mr. Espinoza-Cota moves for disclosure of T.E.C.S. information regarding any and all crossings by the 1989 white and grey-striped Ford F-250 pick-up truck (California License Plate number 8N16454), **<u>prior to</u>** April 8, 2008, at 3:46 p.m.

This information qualifies as *Brady* material and must be disclosed.

9. <u>Evidence Seized</u>. Under Fed. R. Crim. P. 16(a)(1)(C), the defense moves for a copy of discovery of evidence seized as a result of any search.

SA Wood or his partner examined a telephone recovered from Mr. Espinoza-Cota after his arrest and also discovered five outgoing telephone calls. Further, SA Wood or his partner wrote down the five outgoing telephone numbers in either notes or in SA Wood's ROI. But, the numbers have not been turned over to the defense and the defense has not had an opportunity to search the phone.

Mr. Espinoza-Cota requests the Court order the Government to disclose this information **on or before September 12, 2008.** In this case, the information contained within the telephone falls under *Brady* because it may lead to favorable, exculpatory information that is necessary for a proper investigation.

10. Tangible Objects. Under Fed. R. Crim. P. 16(a)(2)(C), Defendant specifically requests the opportunity to inspect and copy and test, if necessary, all documents and tangible objects, including any books, papers, photographs, buildings, automobiles, or places, or copies, depictions, or portions thereof which are material to the defense or intended for use in the government's case-in-chief, or were obtained from or belong to Defendant.

11. Evidence of Criminal Investigation of Any Government Witness. Defendant moves for production of any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct.

12. Jencks Act Material. Defendant moves for production in advance of trial of all material, including dispatch tapes, which the Government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500 and FED. R. CRIM. P. 26.2. Advance production will avoid the possibility of delay at the request of defendant to investigate the Jencks material. A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under § 3500(e)(1). *Campbell v. United States*, 373 U.S. 487, 490-92 (1963).

13. Expert Summaries. Defendant moves for production of written summaries of all expert testimony the Government intends to present under Federal Rules of Evidence 702, 703 or 705 during its case-in-chief, written summaries of the bases for each expert's opinion, and written summaries of the experts' qualifications. FED. R. CRIM. P. 16(a)(1)(E)-(G).

14. Reports of Scientific Tests or Examinations. Under Fed. R. Crim. P. 16(a)(1)(D), Defendant moves for discovery of the reports of all tests and examinations conducted upon the evidence in this case, including but not limited to any fingerprint analyses or chemical tests that are within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the

attorney for the government, and which are material to the preparation of the defense or which are intended for use by the government as evidence-in-chief at trial.

15. Residual Request. Defendant intends by this discovery motion to invoke the right to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States. This request specifically includes all subsections of Rule 16. Defendant requests that the Government provide Defendant and his attorney with the above requested material sufficiently in advance of trial to avoid unnecessary delay before trial and before cross-examination.

## III. PRESERVATION OF EVIDENCE

Defendant specifically moves for the preservation of all dispatch tapes and any other physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the Government and which relates to the arrest or the events leading to the arrest in this case. *See Riley*, 189 F.3d at 806-08. Defendant further requests that the government be ordered to question all the agencies and individuals involved in the prosecution and investigation of this case to determine if such evidence exists, and if it does exist to instruct those parties to preserve it. This request also includes any material or percipient witness who might be deported or is otherwise likely to become unavailable (e.g., undocumented aliens and transients). U.S. Customs Service requires a court order for the preservation of narcotics, and Defendant hereby moves for such an order.

## IV. THE COURT SHOULD SUPPRESS MR. ESPINOZA-COTA'S STATEMENT MADE DURING HIS CUSTODIAL INTERROGATION BECAUSE HE DID NOT KNOWINGLY AND INTELLIGENTLY UNDERSTAND AND WAIVE HIS *MIRANDA* RIGHTS

Mr. Espinoza-Cota's statements ***must*** be suppressed because they were not made following a knowing, voluntary, and intelligent waiver of his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

To be effective, a waiver of the right to remain silent and the right to counsel must be made knowingly, intelligently, and voluntarily. *Schneckloth v. Bustamonte*, 412 U.S. 218

(1973). The standard of proof for a waiver of this constitutional right is *high*. *Miranda*, 384 U.S. at 475. *See United States v. Heldt*, 745 F.2d 1275, 1277 (9th Cir. 1984).

In *Derrick v. Peterson*, 924 F.2d 813 (9th Cir. 1990), the Ninth Circuit confirmed that the issue of the validity of a *Miranda* waiver requires a two prong analysis; the waiver must be both: (1) voluntary, and (2) knowing and intelligent. *Id*. at 820. The voluntariness prong of this analysis "is equivalent to the voluntariness inquiry under the [Fifth] Amendment . . . ." *Id*. The second prong, however, requiring that the waiver be "knowing and intelligent," mandates an inquiry into whether "the waiver [was] made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Id*. at 820-21 (*quoting Colorado v. Spring*, 479 U.S. 564, 573 (1987)). This inquiry requires that the court determine whether "the requisite level of comprehension" existed before the purported waiver may be upheld. *Id*. Thus, "[o]nly if the 'totality of the circumstances surrounding the interrogation' reveal ***both*** an uncoerced choice ***and*** the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Id*. (*quoting Colorado*, 479 U.S. at 573) (citations omitted) (emphasis added). *See also United States v. Garibay*, 143 F.3d 534, 537-38 (9th Cir. 1998) (stating that agents must use caution when dealing with defendants with limited English skills and ***low mental capacity***).

**A. Facts Relevant to Mr. Espinoza-Cota's Suppression Motion**

On April 8, 2008, Mr. Espinoza-Cota was interrogated by SA Brandon Wood and SA Ruben McDowell. Bates Stamp ("BS") 5.[1/] This interrogation was video-taped.[2/]

At **7:48:40**, SA Wood told Mr. Espinoza-Cota that before proceeding with the interview, he had to make sure Mr. Espinoza-Cota understood his rights.[3/]

SA Wood then showed Mr. Espinoza-Cota a waiver form. *See* Exhibit A, "Waiver of Rights form." Although the form reads, "***I have had the above statement of my rights read and***

[1/] Bates Stamp citations refer to the pages of discovery provided to defense counsel by the Government.

[2/] The DVD-recorded interrogation of Mr. Espinoza-Cota is being submitted to the Court's chambers. For purposes of the motion hearing, the DVD of Mr. Espinoza-Cota's interrogation is labeled "Exhibit B."

[3/] The time-stamped citations refer to the time stamps using Windows Media Player.

***explained to me and I fully understand these rights***," SA Wood asked Mr. Espinoza-Cota to read each right out loud. *See* Exhibit B, "DVD of Mr. Espinoza-Cota's Interrogation."

Although Mr. Espinoza-Cota mumbled parts of each statement out loud, it is clear from the DVD that he was having trouble reading the form. *See id.* It is noticeable from the DVD that Mr. Espinoza-Cota has the most trouble reading the ***last two rights on the form***, the second to last right being the right to have an attorney present during questioning. *See* Exhibit A, **7:50:37**; *see also* Exhibit B.

Perhaps most perplexing is the fact that after mumbling the "Waiver" portion of the form out loud, Mr. Espinoza-Cota signed the form and acknowledged that ***the agents*** read him his rights and explained to him his rights. *See* Exhibit A; *see also* Exhibit B. Neither SA Wood nor SA McDowell read or explained Mr. Espinoza-Cota's *Miranda* rights to him. *See* Exhibit A, **7:50:00**.

At **7:55:49**, Mr. Espinoza-Cota starts to invoke his right to counsel. He tells agents, "Maybe I should hire an attorney . . . I don't want to cut corners or nothin' . . . you're saying if I'm honest with you . . ." Then, SA McDowell interrupts and says, "How much were they going to pay you?" Mr. Espinoza-Cota then makes some statements.

On August 29, 2008, Dr. David P. DeFrancesco, Ph.D., evaluated Mr. Espinoza-Cota at the GEO Group jail. Dr. DeFrancesco performed two cognitive/intellectual functioning tests. *See* Exhibit C, Confidential "Report of Dr. DeFrancesco, p. 4" (filed under seal as Exhibit C). Dr. Defrancesco determined Mr. Espinoza-Cota's "full scale IQ" to be **77**. *Id.* An IQ score of 77 puts Mr. Espinoza-Cota in the Borderline range of functioning. *Id.*

**B. Mr. Espinoza-Cota's Borderline Intelligence Prevented Him from Understanding His *Miranda* Rights**

Persons with IQ scores near 77 "are generally poor problem solvers and will respond impulsively rather than to think about alternative conclusions to their actions." Exhibit C, p. 5. Moreover, persons with Borderline Intellectual Functioning "often do better when they are provided assistance." Exhibit C, p. 6.

It is clear from the DVD that Mr. Espinoza-Cota was struggling just to read the Waiver of Rights form. Despite his struggle, neither agent asked him if he was having trouble reading or if Mr. Espinoza-Cota needed assistance. Moreover, the Waiver of Rights form states that an agent read the suspect his rights and explained to the suspect those rights. ***Neither one*** of these things occurred in this case. Therefore, Mr. Espinoza-Cota's waiver was not knowing and intelligent.

**C. Mr. Espinoza-Cota Did Not Knowingly and Intelligently Waive His Miranda Rights Merely By Signing the Waiver Form**

By signing the Waiver of Rights form, a suspect asserts that an agent read him his *Miranda* rights and explained to him what those rights mean. Here, Mr. Espinoza-Cota signed the Waiver of Rights form and asserted that an agent read and explained to him his rights even though neither ever happened. Moreover, Mr. Espinoza-Cota signed the waiver form after mumbling the above mentioned assertions. *See* Exhibit A, **7:50:00**.

A person who understood what he was signing would not sign a form, asserting that something untrue occurred. Therefore, Mr. Espinoza-Cota's statements should be suppressed.

**D. The Agents Failed to Ascertain Whether Mr. Espinoza-Cota Was Capable of Reading and Comprehending the *Miranda* Rights**

Agent Wood asked Mr. Espinoza-Cota several questions at the beginning of the interrogation, including: (1) his address; (2) his parents' names; (3) their address; etc. *See* Exhibit A, **7:42:06-7:47:51**. Not once does SA Wood determine how far Mr. Espinoza-Cota went in school or whether he could read or write. It is also clear from the DVD that Mr. Espinoza-Cota was having trouble reading the rights form.

Thus, the Government cannot prove that Mr. Espinoza-Cota made a knowing, intelligent and voluntary waiver of his *Miranda* rights because they cannot even show that he could comprehend what he was reading.

### E. Mr. Espinoza-Cota Attempted to Invoke His Right to Counsel

Mr. Espinoza-Cota attempted to assert his right to counsel during his interrogation. While he was deciding out loud whether he should invoke his right to an attorney, SA McDowell immediately interrupted him and stated, "How much were they going to pay you?"

Because Mr. Espinoza-Cota is of borderline intelligence, he responded "impulsively rather than think about alternative conclusions" such as getting a lawyer. Agents should have clarified whether Mr. Espinoza-Cota wanted an attorney. Instead, they tried to get him to abandon that idea and give them a statement. Thus, Mr. Espinoza-Cota's alleged *Miranda* waiver was not knowing, intelligent and voluntary.

### F. Conclusion

For the foregoing reasons, the Government cannot meet its burden of proving that Mr. Espinoza-Cota's alleged *Miranda* waiver was knowing, intelligent and voluntary. Thus, the Court should suppress Mr. Espinoza-Cota's statements.

## V. THE COURT SHOULD SUPPRESS EVIDENCE OBTAINED FROM THE UNLAWFUL SEARCH OF MR. ESPINOZA-COTA'S CELL PHONE

### A. Facts Supporting Motion to Suppress

On April 8, 2008, Mr. Espinoza-Cota was arrested after CBP officers found approximately 78 kilograms of marijuana hidden in the bed of his vehicle. BS 8. After his arrest, Special Agents ("SA") Wood and McDowell seized a cell phone from Mr. Espinoza-Cota and kept it as evidence. BS 34.

There is no evidence suggesting that Mr. Espinoza-Cota consented to the searching of his cell phone. If agents searched Mr. Espinoza-Cota's cell phone without a warrant, the fruits of that warrantless search must be suppressed.

### B. The Fourth Amendment Prohibits Warrantless Searches Absent an Exception

The Fourth Amendment of the United States Constitution protects "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Warrantless searches are per se unreasonable under the Fourth Amendment subject

to only a few specifically established and well delineated exceptions. *Mincey v. Arizona*, 437 U.S. 385, 390 (1978).

Here, it appears the government unlawfully searched Mr. Espinoza-Cota's cell phone without a warrant and without consent. Agents illegally seized private information contained in the cell phone by searching the cell phone's memory. The government may seek to admit the fruits of this unlawful search at Mr. Espinoza-Cota's jury trial.

The Court should preclude the government from introducing ***any*** evidence obtained from the cell phone because the search and seizures violated Mr. Espinoza-Cota's constitutional and statutory rights.

**C. The Unlawful Seizure of Information from Mr. Espinoza-Cota's Cell Telephone Violated the Fourth Amendment.**

Courts have recognized that information may be seized within the meaning of the Fourth Amendment.[4/] In *United States v. Freitas*, 800 F.2d 1451 (9th Cir. 1986), the Ninth Circuit addressed the seizure of intangible items within the context of Federal Rule of Criminal Procedure 41. Rule 41, which is titled "Search and Seizure," defines "property" to "include[] documents, books, papers, any other tangible objects, and *information*." FED. R. CRIM. P. 41 (emphasis added). In *Freitas*, the information to be seized was "information regarding the 'status of the suspected clandestine methamphetamine laboratory.'" 800 F.2d at 1455. Agents, armed with search warrants, seized the information by simply viewing the defendant's home and six storage lockers. *Id.* at 1453.

Here, just as in *Freitas*, agents seized information from Mr. Espinoza-Cota's cell phone, Agents seized information regarding phone calls, including names of persons called, as well as

---

[4/] Intangible items may be seized within the meaning of the Fourth Amendment. *See Berger v. New York*, 388 U.S. 41, 59-60 (1967) (tape recording conversations); *United States v. Carey*, 172 F.3d 1268 (10th Cir. 1999) (accessing and reading closed computer files); *United States v. Turner*, 169 F.3d 84, 87 (1st Cir. 1999) (same); *United States v. Meriwether*, 917 F.2d 955, 958 (6th Cir.1990) (retrieving telephone numbers from an electronic display pager); *United States v. Marbury*, 732 F.2d 390, 399-400 (5th Cir.1984) (noting identification numbers from items of equipment); *United States v. Dichiarinte*, 445 F.2d at 130-31 (7th Cir. 1971) (opening and reading tax returns); *United States v. David*, 756 F. Supp. 1385, 1389 (D. Nev.1991) (retrieving contents of computer memo book). "[T]he Fourth Amendment also affords protection from the unreasonable search and seizure of the computer memory of a cell phone to retrieve its electronic contents." *Smith v. Indiana*, 713 N.E.2d 338, 344 (Ind. App. 1999).

the dates and times of each call from the "Recent Calls" directory of the cell phone. The agents seized this information by viewing the phone's call directory and by writing down the names and phone numbers.

Because the information was seized without a warrant, without consent, and not pursuant to exigent circumstances, all data seized from the phone violates the Fourth Amendment.

**D. *Arizona v. Hicks* Shows That the Search Violated the Fourth Amendment.**

The Fourth Amendment forbids "unreasonable" searches and seizures, and, in the absence of an exigent circumstance, requires police to obtain a warrant or consent before carrying out a search or seizure. *See United States v. Osife*, 398 F.3d 1143, 1145 (9th Cir. 2005); *see also United States v. Matlock*, 415 U.S. 164 (1974). The search of Mr. Espinoza-Cota's cell phone memory occurred without a warrant and without consent.

Physically manipulating the phone by turning it on, flipping it open and scrolling through "Recent Callas" constitutes searches within the meaning of the Fourth Amendment. In *Arizona v. Hicks*, 480 U.S. 321, 325-26 (1987), the Supreme Court determined that *moving a piece of stereo equipment* in order to find the serial number constituted a search even though police were legally present in the apartment based on exigent circumstances. In *Hicks*, the initial entrance and the search of the residence, although warrantless, were justified by an exigent circumstance. In *Hicks*, the exigent circumstance was that a bullet was fired through the floor of Hick's apartment, striking and injuring a man in the apartment below. *Id.* at 323. Although this exigency allowed the police to be physically present in the apartment without violating the Fourth Amendment, the Court held that the action of moving pieces of stereo equipment in order to find serial numbers violated the Fourth Amendment protection against unreasonable searches.

Here, as in *Hicks*, physically moving or manipulating an electronic devise to see numbers constituted an illegal search. Moreover, the search here was obviously much more intrusive than the search in *Hicks*. The opening of Mr. Espinoza-Cotas cell phone is certainly more intrusive than simply moving stereo equipment to see serial numbers that are clearly displayed on the exterior of the equipment. As a result of this intrusion, agents were able to gather information

about Mr. Espinoza-Cota's friends and family members. Thus, all evidence seized which resulted from the unlawful search of the phone must be suppressed.

**E. The Search Was Not *Incident to* Arrest Under the Fourth Amendment**.

The search of Mr. Espinoza-Cota's cell phone was not *incident to* a lawful arrest. The search-incident-to-a-lawful-arrest exception exists for officer safety and to prevent destruction of evidence. *See Chimel v. California*, 395 U.S. 752 (1969). Neither rationale applies here.

In *United States v. Chadwick*, 433 U.S. 1 (1977), the Supreme Court clarified the reason for the search *incident to* a lawful arrest exception to the Fourth Amendment. According the *Chadwick* court:

> To safeguard himself and others, and to prevent the loss of evidence, it has been held reasonable for the arresting officer to conduct a *prompt*, warrantless search of the arrestee's person and the area within his immediate control construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

*Id.* at 14 (quotation marks omitted) (citing *Chimel v. California*, 395 U.S. 752, 763 (1969) and *Terry v. Ohio*, 392 U.S. 1 (1968).) Based on this, the *Chadwick* court found:

> Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property in no longer an incident of the arrest.

*Id.* In *Chadwick*, the Court determined that because the search was conducted more than an hour after agents "gained exclusive control of the [container]," the search was not *incident to* arrest.

Here, the government has not disclosed when the search of the data contained in the cell phone was conducted. Presumably, the search of the cell phone was not conducted until after Mr. Espinoza-Cota was arrested and interrogated and while the cell phone was in the custody and control of the agents. The phone posed no threat to officer safety. Therefore, even if the search had been conducted contemporaneously with the arrest, such a search would have run afoul of the rationale behind the search-incident-to-arrest exception to the warrant requirement.

Further, because the agent seized the cell phone, there was no danger the phone's memory would be destroyed while he sought a warrant — the cell phone was in the custody and control of the agents, not in the custody and control of Mr. Espinoza-Cota. In sum, the search here does not fall within the search-incident-to-a-lawful-arrest exception to the Fourth Amendment because a cell phone is not a weapon and because destruction of evidence was not at risk.

**F. The Plain View Exception Does Not Apply.**

"To fall within the plain view exception, two requirements must be met: the officers must be lawfully searching the area where the evidence is found and the incriminatory nature of the evidence must be immediately apparent." *Roe v. Sherry*, 91 F.3d 1270, 1272 (9th Cir. 1996) (citations omitted); *see also Horton v. California*, 496 U.S. 128, 135-37 (1990); *Arizona v. Hicks*, 480 U.S. 321, 326-27 (1987).

Here, the government cannot satisfy either requirement. First, manipulating the phone, turning it on, and scrolling through displays by pressing buttons is a search, fruits of which were obviously not in plain view. Second, "the incriminatory nature" of the evidence seized from the cell phone (unlike drugs or a gun) is not "immediately apparent." *Id.* Therefore, the plain view exception does not apply. *See Stanley v. Georgia*, 394 U.S. 557, 571 (1969) (a moving picture film found in desk drawer was not contraband, criminal activity, or criminal evidence in plain view; thus officers could not watch the film in search of evidence of criminal behavior).[5/]

**G. The *Border Search* Exception Does Not Apply.**

The purpose of the border search exception to the warrant requirement is to "protect the country from the entry of drugs, weapons, explosives, and unauthorized persons and things." *United States v. Cortez-Rocha*, 394 F.3d 1115, 1119 (9th Cir. 1995). To protect our country from the importation of contraband, CBP officers do not need a warrant to search vehicles and areas that might contain contraband. The border search exception does not apply to cell phones, however.

---

[5/] Just as there is nothing inherently suspect or criminal about a film reel, there is nothing inherently suspect or criminal about a cell phone. Given the widespread use of cell phones, the mere possession of one does not provide even reasonable suspicion to believe the possessor may have committed a crime. To conclude otherwise would be to ignore the cell phones's ubiquity in modern society.

Here, agents did not search Mr. Espinoza-Cota's cell telephone for "drugs, weapons, explosives, [or] unauthorized persons or things." *Cortez-Rocha*, 394 F.3d at 1119. They searched the data stored in the memory of the phone to further their investigation of Mr. Espinoza-Cota's possible involvement in drug smuggling. When agents searched through Mr. Espinoza-Cota's cell phone, they were looking for telephone numbers of persons who might also be involved. They were not looking in the phone for contraband; they were looking for telephone numbers and personal contact information.

The border search exception to the warrant requirement is not as an investigative tool, but rather an exception to the warrant requirement that is limited to border searches *for contraband*. Therefore, because the search of the cell telephone's memory was not a search for "drugs, weapons, explosives, [or] unauthorized persons or things," *Cortez-Rocha*, 394 F.3d at 1119, the border search doctrine does not apply to the case at bar.[6/]

1. applying *United States v. Arnold*

*United States v. Arnold*, 523 F.3d 941 (9th Cir. 2008) indicates that the border search exception applies to laptops seized an airport and therefore, may apply to his case. However, Mr. Espinoza-Cota asserts that the Ninth Circuit's reasoning behind its holding in *Arnold* is misplaced. *See* Arnold, 523 F.3d at 947 (likening a laptop to luggage, wallets or purses, and mobile homes, all of which are "readily moveable.")

A cell phone, like a laptop, is quite different from a vehicle. A cell phone stores a person's personal information regarding who he calls, when he calls them, and how long he talks to them. A cell phone can relate people's names to their phone numbers and store this information in the phones' memory. A wallet or purse contains only things such as identification, receipts, and money. A car is capable of carrying and moving hundreds of pounds of contraband. The Ninth Circuit was wrong when likening a laptop to luggage, a wallet and purse, and a vehicle. Because Mr. Espinoza-Cota believes this issue may be resolved in his

---

[6/] Notably this case does not involve searching the cell phone for contraband. For example, the agents did not drill into or dismantle the phone to find drugs. Therefore, the rationale for the border search exception does not apply to the facts of this case.

favor in the United States Supreme Court, he challenges the legality of the Ninth Circuit's holding in *Arnold*.

Second, Mr. Espinoza-Cota's case is distinguishable from the *Arnold case*. In *Arnold*, the CBP officers allowed Mr. Arnold to open his own laptop in their presence. *Arnold*, 523 F.3d at 943. Allowing Mr. Arnold to open his own property may have supported the court's finding that the search was not "particularly offensive." *Id*. at 947. In contrast, here, agents seized Mr. Espinoza-Cota's cell phone and searched through it outside of his presence and without his aid. Thus, unlike in *Arnold*, the agents' search in this case was "particularly offensive."

Third, Mr. Arnold was in the Los Angeles International airport. *Id*. at 943. Unlike in *Arnold*, the search of Mr. Espinoza-Cota's cell phone occurred at the border.

Fourth, the *Arnold* court forgot to address the original rationale behind the border search exception: to protect the United States from the entry of contraband, weapons, explosives, and other unauthorized things. *See Cortez-Rocha*, *supra*, 394 F.3d at 1119. Here, there was no danger that Mr. Espinoza-Cota's cell phone may have contained any contraband. The contraband was found in Mr. Espinoza-Cota's vehicle. Because agents discovered the contraband *before* seizing Mr. Espinoza-Cota's cell phone, the need to search the phone for contraband was unnecessary. More important, the agents ***did not*** search the phone for contraband; they used the phone as an investigative devise to search for information, not contraband.

For the foregoing reasons, Mr. Espinoza-Cota requests the Court find his case distinguishable from the *Arnold* case and suppress the fruits from the warrantless search of his cell phone.

**H. Inevitable Discovery Does Not Apply.**

The inevitable discovery doctrine acts as an exception to the exclusionary rule, and permits the admission of otherwise excluded evidence "if the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police." *Nix v. Williams*, 467 U.S. 431, 447 (1984). The government must make this showing by a preponderance of the evidence. *See id.* at 444. However, "[t]he inevitable discovery doctrine applies only when the fact that makes discovery

inevitable is born of circumstances other than those brought to light by the illegal search itself." *United States v. Reilly*, 224 F.3d 986 (9th Cir. 2000) (citing *United States v. Boatwright*, 822 F.2d 862, 864-65 (9th Cir. 1987) (emphasis added). Here, the "discovery" of the data was "brought to light by the illegal search itself," because agents would not have discovered the numbers and other data ***but for*** their illegal search. Other than obtaining a warrant to search the phone, there is no independent source for the information the government retrieved from searching the phone's memory. Therefore, because a warrantless search resulted in the discovery of fruitful evidence, the seizure of the data violated the Fourth Amendment.

**I. Conclusion**

This Court must suppress all fruits discovered as a result of the unlawful search of Mr. Espinoza-Cota's cell phone.

Here, all evidence seized from the cell phone must be suppressed because it was seized without a search warrant, without Mr. Espinoza-Cota's consent, and in the absence of exigent circumstances. *United States v. Crawford*, 372 F.3d 1048, at 1053-54 (9th Cir. 2004) (en banc) (holding that the Fourth Amendment's exclusionary rule "applies to statements and evidence obtained as a product of illegal searches and seizures" whenever there is a "causal connection between the illegal conduct and the evidence sought to be suppressed"); *see also Wong Sun v. United States*, 371 U.S. 471, 485, 83 S.Ct. 407 (1963) ("Thus, verbal evidence which derives so immediately from an unlawful entry and an unauthorized arrest as the officers' action in the present case is no less the 'fruit' of official illegality than the more common tangible fruits of the unwarranted intrusion.").

## VI. <u>REQUEST FOR JUDICIAL NOTICE</u>

Whereas Exhibit A was previously filed in support of Docket #15;

Whereas Exhibits B (a DVD of the interrogation) was delivered to chambers; and

Whereas Exhibit C (a Confidential Psychological report) was filed under seal;

The undersigned requests that the Court take judicial notice of those exhibits without required that the be re-filed anew with this Second Amended set of motions.

## VII. LEAVE TO FILE FURTHER MOTIONS

Defendant hereby requests leave to file further motions as may be necessary.

## VIII. CONCLUSION

For the foregoing reasons, Mr. Espinoza-Cota requests the Court grant his motions.

Dated: *September 9, 2008*

*s/Kurt David Hermansen*

Attorney for Defendant
Email: KDH@KurtDavidHermansen.com